UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


TROMONDO TOBIAS BOLLING,

     Petitioner,

v.                                     Case No. 3:13cv473/MCR/CJK

JULIE L. JONES,[1]

     Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

     Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254. (Doc. 1). Respondent filed an answer, submitting relevant portions of the state court record. (Doc. 25). Petitioner replied. (Doc. 30). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that

---

[1]Julie L. Jones succeeded Michael D. Crews as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent. Fed. R. Civ. P. 25(d).

the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On November 14, 2008, petitioner was charged in Escambia County Circuit Court Case No. 08-CF-5285, with burglary of a conveyance with assault or battery (Count 1) and robbery without a weapon (Count 2). (Doc. 25, Ex. A).[2] Petitioner went to trial, and the jury found him guilty of both counts as charged. (Ex. B). By judgment rendered July 24, 2009, petitioner was adjudicated guilty and sentenced on Count 1 to 20 years imprisonment followed by 5 years on probation, and a concurrent term of 15 years imprisonment on Count 2. (Ex. G.). The Florida First District Court of Appeal (First DCA) affirmed the judgment on April 14, 2011. *Bolling v. State*, 61 So. 3d 419 (Fla. 1st DCA 2011) (copy at Ex. H). Petitioner's notice to invoke the discretionary jurisdiction of the Florida Supreme Court was dismissed as untimely on June 20, 2011. *Bolling v. State*, 67 So. 3d 198 (Fla. 2011) (Table) (unpublished opinion).

On April 5, 2012, petitioner filed a *pro so* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. J). The motion was stricken as facially insufficient with leave to amend within thirty days. (Ex. K). Petitioner timely filed an amended Rule 3.850 motion. (Ex. L). The state circuit court summarily denied relief without an evidentiary hearing. (Ex. M). Petitioner appealed, and filed an initial brief. (Ex. N). The First DCA affirmed, per curiam and

---

[2]All references to exhibits are to those provided at Doc.25, unless otherwise noted. If a cited page has more than one page number, the court cites to the page number appearing at the bottom center of the page.

without a written opinion. *Bolling v. State*, 116 So. 3d 1265 (Fla. 1st DCA 2013) (Table) (copy at Ex. O). The mandate issued August 6, 2013. (Ex. P).

Petitioner filed his federal habeas petition in this court on August 22, 2013. (Doc. 1). The petition raises three claims of ineffective assistance of trial counsel. (*Id*.). Respondent asserts that petitioner's claims fail for one or both of the following reasons: (1) the state courts' rejection of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts; (2) the claim is procedurally defaulted. (Doc. 25). Petitioner filed a reply indicating that he rests on the arguments made in his petition. (Doc. 30, p. 1 ("Petitioner avers that it would be useless to issue a reply in this matter and therefore firmly stands on his initial pleadings that was previously filed.")).

## LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct'

---

[3]Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

  (A)  the applicant has exhausted the remedies available in the courts of the State; or

  (B) (i)  there is an absence of available State corrective process; or

    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the

---

. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary

to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the

Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

## DISCUSSION

Ground One      "Ineffective Assistance Of Trial Counsel Due To Trial Counsel's Failure To Advise The Defendant Of A Potential Pretrial Defense And Failure To File A Motion To Dismiss In Violation Of The Defendant's 6th and 14th Amend., U.S. Const. Rights" (Doc. 1, p. 7).

Petitioner claims trial counsel was ineffective for failing to inform him of a potential defense and for failing to file a corresponding pretrial motion to dismiss the charges based on that defense. Petitioner's "potential defense" is that the State's fingerprint evidence failed to show that his fingerprints found on the victim's car

were made at the time the crime was committed. (Doc. 1, pp. 8-10). The parties agree that petitioner raised this claim in his state postconviction proceeding as Ground One. Respondent asserts that the validity of the claim counsel failed to assert is clearly a question of state law, that this court must defer to the state courts' resolution of that state-law issue, and that applying that deference, the state courts' rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (Doc. 25, pp. 5-11).

A.      Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be

highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

B.     Section 2254(d) Review of State Courts' Decision

The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the standard applicable to petitioner's ineffective assistance claims:

> As a general principle, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that 1) counsel's performance was deficient and 2) there is a reasonable probability that the outcome of the proceeding would have been different had counsel not been deficient. *See Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324 (Fla. 1994), *construing Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Thus, there is a two-part inquiry: counsel's performance and prejudice.
>
> In reviewing counsel's performance, the court must be highly deferential to counsel, and in assessing the

performance, every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

*Spencer v. State*, 842 So. 2d 52, 61 (Fla. 2003), *quoting Strickland*, 466 U.S. at 689.

Defendant bears the burden of showing that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. There is a "wide range of professionally competent assistance" that passes this constitutional muster. *Bertolotti v. State*, 534 So. 2d 386, 387 (Fla. 1988). Furthermore, there is a "strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of **reasonable professional judgment** with the burden on claimant to show otherwise." *Blanco v. Wainwright*, 507 So. 2d 1377, 1381 (Fla. 1987), *quoted in Bertolotti*, 534 So. 2d at 387 (emphasis added).

Even if Defendant's counsel fell below such standards, Defendant would not automatically prevail. Defendant must also meet the prejudice prong of the *Strickland* test. For Defendant to prevail on this point, he must demonstrate that there is a "reasonable probability that, but for the deficiency, the result of the proceeding would have been different." *Spencer*, 842 So. 2d at 61. Moreover, "[a] court considering a claim of ineffective assistance of counsel need not determine whether counsel's performance was deficient **when it is clear that the alleged deficiency was not prejudicial.**" *Torres-Arboleda*, 636 So. 2d at 1324 (emphasis added). In other words, Defendant must demonstrate a "probability sufficient to undermine confidence in the outcome." *Spencer*, 842 So. 2d at 61. Indeed, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S.Ct. 770, 792 (2011). With theses principles in mind, the Court will address Defendant's claims.

(Ex. M, pp. 62-63) (emphasis in original) (footnote omitted).

The state circuit court denied relief on this particular claim, explaining in pertinent part:

### Ground one:  Potential Defense

First, Defendant argues that counsel was ineffective in failing to inform defendant that fingerprints must be able to be shown to have been left at the scene of the crime at the time of the crime.  Defendant contends that his fingerprints were found solely on the exterior of the car and could have been put there at any time.  Defendant alleges that counsel should have informed him of this defense and made a motion to dismiss the Information due to this issue.

When the state relies solely upon fingerprint evidence to establish a defendant's guilt, the evidence must demonstrate that the fingerprint could have only been made when the crime was committed." *K.S. v. State*, 814 So. 2d 1190, 1192 (Fla. 5th DCA 2002).

In this case, the State did not rely solely on the fingerprint evidence to establish defendant's guilt.  The State also brought out that the victim had made a positive identification of Defendant, that Defendant was wearing clothing matching the description given police of the perpetrator, that the K-9 officer had followed the track to Defendant, and that Defendant was in the vicinity of the crime at the time that it occurred.  The fingerprint evidence simply added to the totality of the circumstances that the jury could consider in their deliberations.  Counsel is not deficient for failing to make a meritless motion.

(Ex. M, pp. 63-64) (footnote citing to portions of trial transcript omitted).  Petitioner appealed, alleging error in the circuit court's failure to hold an evidentiary hearing on this particular claim (identified as Ground One both here and in petitioner's

postconviction proceeding), and in the circuit court's denial of relief on this claim. (Ex. N, pp. v and 1-4). The First DCA summarily affirmed. (Ex. O).

The "contrary to" prong of the AEDPA standard is not implicated here, because the state court utilized the *Strickland* standard. Section 2254(d)(2) likewise provides no basis for relief, because petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)). The remaining question is whether petitioner has satisfied AEDPA's "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's findings of fact. 28 U.S.C. § 2254(e).

The state courts determined, as a matter of state law, that the "potential defense" petitioner identified did not apply because the State did not rely solely on the fingerprint evidence to establish petitioner's guilt. When state courts have answered the question of how an issue would have been resolved under the State's law had defense counsel done what petitioner argues she should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted). Because this court will not "second guess" the Florida state courts' conclusion that petitioner's proposed defense did not apply, petitioner cannot demonstrate that counsel was deficient for failing to advise petitioner the defense was viable, or for failing to seek dismissal of the charges on the basis of that defense (that the fingerprint evidence

failed to demonstrate that petitioner's fingerprints could only have been made when the crime was committed). *See Callahan* at 932; *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (explaining, in the context of an ineffective assistance of appellate counsel claim, that "[o]n the one hand, the issue of ineffective assistance – even when based on the failure of counsel to raise a state law claim – is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted).[5]   A lawyer cannot be deficient for failing to raise a meritless claim. *Freeman v. Attorney Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).  The state courts' rejection of Ground One was neither contrary to, nor involved an objectively unreasonable application of, the *Strickland* standard.

| | |
|---|---|
| Ground Two | "Ineffective Assistance of Trial Counsel Due To Trial Counsel's Failure To File And Argue A Proper Motion For New Trial Alleging Juror's Nondisclosure Misconduct And By Not Using/Arguing The Correct Legal Standard Of Review In Violation Of Defendant's 6th and 14th Amend., U.S. Const. Rights" (Doc. 1, p. 11). |

Petitioner claims trial counsel was ineffective in arguing a motion for new trial based on juror misconduct, namely, juror Maxwell's failure to disclose during voir dire that he knew petitioner's mother Meachel Randall (a defense witness at trial) and, through her, petitioner (or at least who petitioner was).  Petitioner argues that the juror misconduct claim was raised on direct appeal, and that the First DCA's

---

[5]*Alvord* was superseded by statute on other grounds as noted in *Hargrove v. Solomon*, 227 F. App'x 806 (11th Cir. 2007).

discussion of the claim reveals that trial counsel failed to properly argue the issue to the trial court because she argued merely that the defense <u>could</u> have struck juror Maxwell, instead of arguing and alleging facts showing that the defense <u>would in all likelihood</u> have used a peremptory challenge to strike Maxwell had it known of the acquaintance. (Doc. 1, pp. 11-14). Petitioner argues that but for counsel's deficient conduct, there is a reasonable probability the outcome of his motion for new trial and direct appeal would have been different. (Doc. 1, p. 13).

The parties agree that petitioner raised this claim in his state postconviction proceeding as Ground Two. Respondent asserts that the state courts' rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (Doc. 25, pp. 5-11).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

B.     Review of State Courts' Decision

The state courts denied petitioner's claim on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, began by correctly identifying and explaining the *Strickland* standard as the controlling legal standard. (Ex. M, pp. 62-63). The state circuit court denied relief on this particular claim as follows:

**Ground two:  *Motion for New Trial***

Defendant next alleges that his counsel was ineffective in advancing and arguing the incorrect legal standard in Defendant's motion for new trial. Defendant relies upon the appellate opinion in his case to show that his counsel performed deficiently in this respect.

The facts are as follows: Juror Maxwell realized while Defendant's mother was on the stand that she was a tenant at a rental property his wife owned and that the witness attended his church. He did not inform the Court that he had recognized the witness, but he did inform his fellow jurors of his recognition. At the evidentiary hearing held on the motion for new trial, Defendant and the juror both denied having recognized each other earlier. The Court engaged in a *De La Rosa* inquiry[FN 7] and denied the motion for new trial. The appellate court affirmed the decision of the trial court but did not find that Defendant had met the requirements of *De La Rosa*, in part because his counsel had never alleged that, had she known about the relationship between the juror and Defendant's mother, she would have exercised a peremptory strike.

FN 7: *De La Rosa v. Zequeira*, 659 So. 2d 239 (Fla. 1995).

Deficiency is not the only consideration in the *Strickland* analysis. Defendant must show prejudice in order to be granted relief. In order to show prejudice in this situation, Defendant would have to show that the juror was actually biased against Defendant. "Under the actual bias standard, the Defendant must demonstrate that the juror in question was not impartial – i.e., that the juror was biased against the defendant, and *the evidence of bias must be plain on the face of the record.*" *Lugo v. State*, 2 So. 3d 1, 16 (Fla. 2008), *citing Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007).

Defendant alleges that the juror may have been biased because defendant did not attend church, because Defendant was addicted to drugs, and because Defendant was an embarrassment to his mother. Defendant, however, points to nothing in the record that shows actual bias on the part of this juror. After hearing the testimony of Defendant, his mother, and Juror Maxwell, the Court determined that the juror "says he didn't have any relationship with [Defendant], and there has not been anything to indicate that there was a relationship. And if there was, it was a bad one. That there was any kind of anything to infect the integrity of that relationship." Hence, no actual bias has been shown. The appellate court noted, "Mr. Maxwell did not recognize [Defendant]

> on sight, was apparently on friendly terms with his mother, and was not
> shown to have received any information outside the trial detrimental to
> his position." *See Bolling v. State*, 61 So. 3d 419, 423 (Fla. 1st DCA
> 2011). Based upon these considerations, the Court finds that Defendant
> is not entitled to relief on this ground.

(Ex. M, pp. 64-65) (emphasis in original) (footnotes citing to motion-for-new-trial
evidentiary hearing transcript and trial transcript omitted). Petitioner appealed,
alleging error in the circuit court's failure to hold an evidentiary hearing on this
particular ineffective assistance claim (identified as Ground Two both here and in
petitioner's postconviction proceeding), and in the circuit court's denial of relief on
this claim. (Ex. N, pp. v and 5-9). The First DCA summarily affirmed. (Ex. O).

Respondent asserts that "[t]his claim is without merit, as there was never
evidence of actual bias in the record upon which a finding of prejudice could rest
under *Strickland*." (Doc. 25, p. 11). Respondent's argument is two-fold. First,
respondent contends that this ineffective assistance claim is dependent upon state law,
namely, the *De La Rosa* test. (Doc. 25, p. 13). Respondent argues further that "the
issue is analyzed in an ineffective assistance claim under the less strict standard of
'actual bias'" discussed in *Lugo, supra*, and *Carratelli, supra.* (Doc. 25, p. 13).
Respondent concludes that "[b]ecause this issue is predicated on a determination of
state law, this Court is bound by the state court determination that the state law
element was [not] met and this claim is properly denied." (Doc. 25, p. 14).

The undersigned cannot agree that the state courts' rejection of petitioner's
ineffective assistance claim was based on a determination that petitioner's underlying
juror nondisclosure claim failed to meet the State standard – Florida's *De La Rosa*
test. A fair reading of the state court's order indicates that the court required
petitioner to show actual bias in order to satisfy *Strickland*'s prejudice prong. In

other words, when the state court discussed petitioner's failure to show "actual bias",
it was not speaking to the viability, under *De La Rosa*, of petitioner's challenge to
juror Maxwell's nondisclosure. Neither actual bias nor prejudice is an element of
Florida's *De La Rosa* test; nor is either required to meet *De La Rosa*'s materiality
prong. *See Roberts v. Tejada*, 814 So. 2d 334, 342 (Fla. 2002) ("'[P]rejudice' . . . is
not a part of the *De La Rosa* test."); *Fine v. Shands Teaching Hosp. and Clinics, Inc.*,
994 So. 2d 426, 427-28 (Fla. 1st DCA 2008) (holding that trial court erred in
evaluating materiality prong of *De La Rosa* when it focused on whether or not it
believed the jurors were biased when deliberating the case; trial court should have
focused on what the complaining party's counsel would have done during voir dire
had the jurors' litigation history been disclosed); *Companioni v. City of Tampa*, 958
So. 2d 404, 416 (Fla. 2d DCA 2007) (holding that "if the other two parts of the three-
part [*De La Rosa*] test are shown, the complaining party need only establish the
materiality of the undisclosed information to obtain a new trial, not bias or prejudice
in fact."); *accord Murray v. State*, 3 So. 3d 1108, 1121 (Fla. 2009) ("A juror's
nondisclosure . . . is considered material if it is so substantial that, if the facts were
known, the defense likely would peremptorily exclude the juror from the jury."
(*quoting McCauslin v. O'Conner*, 985 So. 2d 558, 561 (Fla. 5th DCA 2008))). The
state circuit court's discussion of actual bias was not in reference to Florida's
standard on juror nondisclosure claims.

The state court's citation to *Lugo, supra*, and *Carratelli, supra*, does not make
respondent's argument any more tenable, as *Lugo* and *Carratelli* involved claims that
trial counsel was ineffective for <u>failing to raise, or failing to preserve a cause
challenge to a prospective juror</u>. *See Carratelli*, 961 So. 2d at 324 ("[W]here a
postconviction motion alleges that trial counsel was ineffective for failing to raise or

preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."); *Lugo*, 2 So. 3d at 9, 13, 16 (addressing State's argument that defendant's juror nondisclosure claim was procedurally barred and that defendant failed to establish ineffective assistance of trial counsel arising from counsel's alleged failure to adequately investigate juror backgrounds during voir dire to discover basis for cause challenge to juror for having been the victim of a violent crime; holding that defendant failed to meet *De La Rosa* test or *Carratelli* actual bias standard). Florida courts apply the *De La Rosa* test, not the actual bias test, in assessing ineffective assistance claims turning on the type of attorney error raised here – an attorney's failure to adequately argue a motion for new trial based on a juror's nondisclosure.[6] *See, e.g., Johnston v. State*, 63 So. 3d 730, 738-39 (Fla. 2011) (affirming denial of postconviction relief on defendant's claim that defense counsel was ineffective for failing to include in the motion for new trial a claim of juror misconduct based on the juror's nondisclosure; holding: "[B]ecause Johnston could not have demonstrated materiality [under the *De La Rosa* test], any motion for new trial based on [the juror's] disclosure would not have been successful. And because the claim lacked merit, counsel cannot be deemed ineffective for failing to raise it." ).

Having concluded that the state courts applied an actual bias standard in determining that petitioner failed to establish prejudice under *Strickland*, the question now arises whether the state courts' decision was contrary to *Strickland*. Respondent argues that the state court's rejection of petitioner's claim is not contrary to, or an unreasonable application of, clearly established United States Supreme Court

_____

[6]Petitioner does not fault counsel for failing to use a cause or peremptory challenge to remove juror Maxwell. Petitioner's claim is that trial counsel failed to properly argue the motion for new trial based on Maxwell's nondisclosure during voir dire.

precedent, because the Eleventh Circuit has recognized that "*Carratelli*'s actual bias test is arguably consistent with *Strickland*." (Doc. 25, p. 14 (*citing Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1201 (11th Cir. 2012)). The full context of the *Owen* court's remark is this:

> Owen argues that the Florida Supreme Court's denial of his jury-selection ineffective assistance claim was contrary to *Strickland* because Florida's actual-bias test is more onerous than *Strickland*'s prejudice prong, which requires a reasonable probability of a different result, not a plain showing of actual bias.
>
> . . . .
>
> To the extent the Florida Supreme Court's denial of Owen's jury-selection ineffective assistance claim was limited to an analysis of the *Strickland* prejudice prong, Owen still is not entitled to relief. *Carratelli*'s actual bias test is arguably consistent with *Strickland*. To "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, Owen must show that at least one juror was biased; if no juror were biased, then there is no "reasonable probability that . . . the result of the proceeding would have been different." *Id*.
>
> Ultimately, we need not decide whether the *Carratelli* actual-bias test for prejudice imposes a higher burden or contradicts the governing *Strickland* prejudice standard. Even if the *Carratelli* prejudice test applied by the Florida Supreme Court in *Owen V* were contrary to *Strickland*, and thus our review were *de novo*, we conclude that Owen cannot prevail on his ineffective assistance claim.
>
> We are wholly unpersuaded that there was a reasonable probability of a different result in either the guilt or penalty phases had Owen's attorneys removed these three jurors. . . .

*Owen*, 686 F.3d at 1197, 1201 (footnotes omitted).

Like the court in *Owen*, this court need not decide whether the actual bias test for prejudice applied by the state courts was contrary to *Strickland*, because petitioner's claim fails even on *de novo* review.

Petitioner's criticism of counsel's representation on the motion for new trial arises from these statements by the First DCA in affirming the denial of a motion for new trial:

> Like the trial court, we conclude that the appellant proved the second and third elements of the supreme court's three-part test [in *De La Rosa*]. . . .
>
> The crux is the first prong, relevance and materiality. . . .
> . . . .
>
> Here, we do not share the trial court's view that Mr. Bolling established that the information Mr. Maxwell failed to disclose was relevant and material to Mr. Bolling's decision not to challenge Mr. Maxwell as a juror. . . . At issue in the present case are relevance and materiality to the defense's – not the prosecution's – decision whether to challenge the juror. . . .
>
> . . . .
>
> Relevance and materiality must be gauged in the context of a party's deciding whether to challenge a juror who failed to make disclosure. Section 913.03 provides the grounds for a challenge for cause, including that "[t]he juror has a state of mind regarding the defendant . . . that will prevent the juror from acting with impartiality." § 913.03(1), Fla. Stat. (2009). "The test for juror competency is 'whether the juror can lay aside any bias or prejudice and render' a verdict solely on the evidence presented and the instructions given. If there is any reasonable doubt about a juror's impartiality, the juror must be excused for cause." Diaz v. State, 45 So. 3d 32, 35 (Fla. 4th DCA 2010) (citations omitted). Here, Mr. Bolling does not argue that he would have challenged Mr. Maxwell for cause.

Nor does the record establish that the information Mr. Maxwell failed to disclose would have made a peremptory challenge by the defense likely. "'While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable.'" *Busby v. State*, 894 So.2d 88, 99 (Fla. 2004) (quoting *Swain v. Alabama*, 380 U.S. 202, 220, 85 S. Ct. 824, 13 L. Ed. 2d 759 (1965) (overruled on other grounds by *Batson v. Kentucky*, 476 U.S. 79, 106, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986))). Mr. Bolling failed to allege cause or any "imagined partiality" in the present case. Mr. Maxwell did not recognize him on sight, was apparently on friendly terms with his mother, and was not shown to have received any information outside the trial detrimental to his position.

Mr. Bolling did have the right to exercise a peremptory challenge – the defense had one peremptory challenge out of ten remaining by the time Mr. Maxwell, juror number 46, was seated. But Mr. Bolling never even alleged that he would have used a peremptory challenge to strike Mr. Maxwell. *See, e.g., Pub. Health Trust of Miami-Dade Cnty. v. Metellus*, 948 So.2d 4, 5 (Fla. 3d DCA 2006) (reversing order granting new trial because a juror did not reveal she had been in a divorce and was the target of collection efforts, in part because there was no showing that counsel would have exercised a peremptory challenge against the juror, had he known the information); *Freedman v. De La Cuesta*, 929 So.2d 25, 26 (Fla. 3d DCA 2006) (no abuse of discretion in denying motion for new trial based on juror nondisclosure when there was no showing that the undisclosed information was substantial and important or that plaintiffs would have exercised a peremptory challenge); *Murphy v. Hurst*, 881 So.2d 1157, 1162-63 (Fla. 5th DCA 2004) (finding that information juror withheld was not material merely because appellant objected to juror's presence on jury).

At the hearing on the motion before the trial court, the defense contended that Mr. Maxwell had a duty to notify the court once he recognized Ms. Randall "so that the [c]ourt could then give [Mr. Bolling] an option of whether to question him, and then whether it [had]

influenced his ability to be fair and impartial." But the appellant did not adequately allege and did not prove the juror's nondisclosure was, from a defense perspective, "relevant and material to jury service in the case." *De La Rosa*, 659 So.2d at 241. The defense argued merely that it "could" have struck Mr. Maxwell, not that it would in all likelihood have exercised a challenge, if it had known that Ms. Randall and Mr. Maxwell were acquainted. *See Fine*, 994 So.2d at 428 (emphasizing that the correct standard is the "would in all likelihood" standard).

*Id*. at 420-24 (footnote omitted) (copy at Ex. O, pp. 6-11).

Petitioner blam es the rejection of his motion for new trial on counsel's "'NOT' adequately alleging and 'NOT' proving" that juror Maxwell's nondisclosure was relevant and material to jury service, as required by *De La Rosa*. (Doc. 1, p. 12). Petitioner asserts that defense counsel "knew or should have known" he needed to allege the following: (1) that there was a reasonable doubt about juror Maxwell's impartiality which would have justified a cause challenge to strike Maxwell from the jury during voir dire; and (2) that there was a "real or imagined partiality" by juror Maxwell "due to the Defendant's drug addiction and not attending church with his mother", for which counsel likely would have used a peremptory challenge to strike Maxwell from the jury during voir dire. (Doc. 1, p. 12).

The basis of petitioner's challenge to juror Maxwell's impartiality is that juror Maxwell was acquainted with petitioner's mother (Meachel Randall), and, through her, petitioner. As was revealed during the evidentiary hearing on petitioner's motion for new trial, Meachel Randall lived in a rental home owned by Mr. Maxwell and his wife Ida. (Ex. D, p. 233; Ex. E, pp. 134-35). The lease on the property was executed between Ida Maxwell and Leroy Hayes (Ms. Randall's fiancé), and was signed by those individuals. (Ex. C, pp. 115-116). The lease identified Ms. Randall and petitioner as additional residents of the home. (Ex. C, pp. 115-116; Ex. D, p.

238; Ex. E, p. 135). Mr. Maxwell did not sign the lease, or have anything to do with the rental agreement. (Ex. E, p. 135). Mr. Maxwell's involvement with the rental property was performing maintenance as needed. Petitioner's mother, Ms. Randall, recalled that in the year leading up to trial, Mr. Maxwell came to the house on more than one occasion to perform maintenance. (Ex. D, p. 234). Ms. Randall described that on those occasions when petitioner was present, Mr. Maxwell and petitioner "would talk, shake hands" (*id.*, p. 234), and that on one particular occasion, Mr. Maxwell instructed petitioner how to trim bushes. The Maxwells and Ms. Randall were also acquainted through their attendance at the same church. During voir dire when defense counsel read the names of potential witnesses (including petitioner's mother) and asked if any of the jurors knew petitioner or any potential witnesses, Mr. Maxwell did not disclose his acquaintance with Ms. Randall or petitioner. (Ex. E, pp. 141-142). During a delay the morning of trial, but before petitioner's trial started, Mr. Maxwell was in the cafeteria and recognized Ms. Randall. (Ex. D, pp. 234-235; Ex. E, p. 136). According to Ms. Randall, Mr. Maxwell asked her what she was doing at the courthouse. (Ex. D, p. 235). Ms. Randall responded that she was there because Tromondo was on trial. Mr. Maxwell responded, "Oh, my gosh," to which Ms. Randall replied, "Well, he will be all right." (Ex. D, pp. 234-235, 238). Ms. Randall did not know Mr. Maxwell was a juror at that time. (Ex. D, p. 236). When Ms. Randall later testified at petitioner's trial, she looked at the jury and recognized Mr. Maxwell. (Ex. D, p. 237). Ms. Randall did not disclose their acquaintance until after the verdict was read, explaining that she did not have an opportunity to notify defense counsel earlier. (*Id.*, pp. 236-238 ).

Leroy Hayes, who lived with Ms. Randall and petitioner at the rental home, testified that on two occasions petitioner was at the house when Mr. Maxwell came to perform maintenance. (Ex. D, p. 241). On one of those occasions, Mr. Maxwell showed petitioner some hedges that could be cut to provide additional room for parking. (Ex. D, p. 240).

Petitioner testified at the evidentiary hearing on the motion for new trial that he had known Mr. Maxwell since he was a little boy, and that in the year prior to trial he came into contact with Mr. Maxwell five or six times. (Ex. D, p. 242). When asked if he recognized Mr. Maxwell during jury selection, petitioner responded: "I really couldn't tell because he had got a haircut and on the street he had longer hair, but he looked kind of familiar." (Ex. D, pp. 242-243). Petitioner admitted that at no point during jury selection or trial did he notify defense counsel that he knew one of the jurors. (Ex. D, p. 243). Petitioner explained that he "was focused on the trial." (*Id*., pp. 243, 244).

Juror Maxwell testified at the evidentiary hearing on the motion for new trial that he never recognized petitioner's name, or petitioner himself, during jury selection or at any time during the trial, even when petitioner was testifying. (Ex. E, pp. 133, 134, 137). Mr. Maxwell did not know petitioner was a resident at his rental property. (*Id*., p. 134). Mr. Maxwell did not recall seeing the name "Tromondo Bolling" on the lease. (*Id*., p. 135). Mr. Maxwell testified that although he knew Ms. Randall from seeing her at the rental property and at church, he did not recognize her name when it was read from the witness list during jury selection. (*Id*., p. 135). Mr. Maxwell testified that during the delay in trial, he went to the cafeteria where he recognized Ms. Randall. (Ex. D, p. 136). Mr. Maxwell asked her

what she was doing there. (*Id*.). Ms. Randall responded that she was there for her son. (*Id*.). Ms. Randall did not say petitioner's name, she only referred to him as "my son". (*Id*.). There was no further discussion. (*Id*.). Mr. Maxwell first realized Ms. Randall was a witness when she took the witness stand. (*Id*.). Mr. Maxwell responded in the negative when asked if he had known petitioner for thirty years, if he had had numerous contacts with petitioner, and if he had had contact with petitioner at the rental house. (Ex. E, pp. 137-138). Mr. Maxwell denied having seen petitioner at the house when he was performing maintenance, and explained that he had been at the house once and, on that occasion, greeted petitioner "through the wall" because petitioner was in his room. (*Id*., p. 138). When asked by defense counsel, "You don't see him at church?", Mr. Maxwell responded: "He don't even come to church. I talk to his mother. I have never seen him in Mass myself." (*Id*., p. 138). Mr. Maxwell repeated, "I seen his mother, his sister, and the other one at church. I ain't never seen him at church . . . Or he was there and I wasn't there, you know." (*Id*.). Mr. Maxwell testified that during a recess in the jury room prior to deliberations, he informed other jurors that Ms. Randall was a tenant in a rental house he owned. (*Id*., pp. 139, 140). Mr. Maxwell said nothing else to the jurors about the acquaintance. (*Id*.).

Petitioner has not shown that counsel was deficient for failing to argue that juror Maxwell's acquaintance with Ms. Randall through the rental property and church would have justified a cause challenge by the defense. The acquaintance, which was apparently friendly, supported, if anything, a cause challenge by the State. *See also Bolling*, 61 So. 3d at 421 n.2 ("That he [Maxwell] knew the defendant's mother and therefore who the defendant was – although Mr. Maxwell apparently did

not recognize him by sight, at least at first – would undoubtedly have been relevant and material to the <u>state</u> in deciding whether or not to challenge Mr. Maxwell as a juror.").

As to counsel's failure to argue that the defense likely would have used a peremptory challenge to remove juror Maxwell due to a "real or imagined partiality" arising from the acquaintance, petitioner has likewise failed to show deficient performance. Petitioner complains that defense counsel should have "alleged and argued" that there was a real or imagined partiality by Mr. Maxwell, "due to the Defendant's drug addiction and not attending church with his mother". (Doc. 1, p. 12). Fatal to petitioner's claim is that he never asserts, and the record is devoid of evidence suggesting, that petitioner ever revealed these factual bases to trial counsel before or during the hearing on the motion for new trial.

Neither in petitioner's state postconviction proceeding nor here, has petitioner ever alleged that he told defense counsel Mr. Maxwell did not like him or had a negative perception of him based on drug addiction and non-attendance at church. Petitioner does not allege, and nothing in the record arguably suggests, that defense counsel was aware, from petitioner or any other source, that Mr. Maxwell knew petitioner was a drug addict or an embarrassment to his mother, or that Maxwell did not like petitioner for those reasons. As to petitioner's church attendance, although there was testimony by Mr. Maxwell on that point, it was not of the character petitioner suggests. Petitioner asserts that Mr. Maxwell did not like him because he did not attend church with his mother, but Mr. Maxwell indicated no such sentiment during his evidentiary hearing testimony. In response to a question whether he had ever seen petitioner at church, Mr. Maxwell simply indicated he had never seen him

at church. Mr. Maxwell then clarified that he was not suggesting petitioner did not attend church, because petitioner may have attended on dates Mr. Maxwell was not there; he was merely dispelling any suggestion that he and petitioner came into contact with each other at church.

It was not until petitioner's postconviction motion, filed long after trial, that petitioner first asserted that "Mr. Maxwell did 'NOT' like the Defendant because the Defendant was a drug addict, did 'NOT' attend church with his mother and was an embarrassment to his mother". (Doc. 1, p. 14). Petitioner not only failed to reveal this information to defense counsel during proceedings on his motion for new trial, he failed to reveal it to the trial court during his testimony on the motion. (Ex. D, pp. 242-244). Trial counsel cannot be deemed unreasonable for failing to argue facts of which her client did not make her aware. *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or action. Counsel's actions are usually based . . . on information supplied by the defendant."); *Chandler v. United States*, 218 F.3d 1305, 1324 (11th Cir. 2000) ("The reasonableness of a trial counsel's acts . . . depends critically upon what information the client communicated to counsel." (internal quotation marks omitted)); *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1325 (11th Cir. 2002) ("Information supplied by a petitioner is extremely important in determining whether a lawyer's performance is constitutionally adequate.").

For defense counsel to have made a successful argument on the motion for new trial (i.e., on *De La Rosa*'s materiality prong), counsel would have required facts to support such argument. As the First DCA recognized and as the trial record

demonstrates, there were no facts in the record to support an argument that Mr. Maxwell's disclosure of his acquaintance with Ms. Randall would have supported a cause challenge, or would have made a peremptory challenge by the defense likely. Petitioner's present attempt – after-the-fact and using hindsight and strained inferences – to plead allegations that <u>could have</u> supported an argument for a finding of cause or "imagined partiality" <u>had counsel been aware of them</u>, cannot establish that counsel's performance on the motion for new trial was objectively unreasonable.

Judging counsel's performance on the basis of the record as it existed at the time of the motion for new trial and direct appeal, petitioner has not shown that counsel's performance was constitutionally inadequate, or that the motion for new trial had a reasonable probability of success. Petitioner is not entitled to federal habeas relief on Ground Two.

| Ground Three | "Ineffective Assistance of Trial Counsel Due to Trial Counsel's Failure To File [sic] Hire An Expert Witness And Failure To Impeach Dog's Abilities In Violation Of Defendant's 6th and 14th Amend., U.S. Const. Rights." (Doc. 1, p. 15). |
|---|---|

Petitioner's final claim charges that trial counsel was ineffective for failing to obtain an expert witness to challenge the qualifications of the K-9 unit police used in investigating the crime. Specifically, petitioner faults counsel for failing to retain an expert witness on "dog tracking" and for failing to "impeach the tracking dog's abilities in the case at bar." (Doc. 1, pp. 15-17). Respondent asserts that this claim is procedurally defaulted, because petitioner failed to present it to the First DCA in his postconviction appeal. (Doc. 25, pp. 17-20). Respondent alternatively argues that even if petitioner is deemed to have properly exhausted the claim, habeas relief

is not warranted because the state court's rejection of it was not contrary to, or an unreasonable application of, the *Strickland* standard. (*Id.*, pp. 20-23).

A.    Exhaustion and Procedural Default

In the First DCA, an appellant who files a brief when appealing a summarily denied postconviction motion is required to address all arguments in his brief that he wishes to preserve for appellate review. *See Watson v. State*, 975 So. 2d 572, 573 (Fla. 1st DCA 2008); *see also Cook v. State*, 638 So. 2d 134, 135 (Fla. 1st DCA 1994).[7] If an appellant does <u>not</u> file a brief when appealing, the appellate court is required to investigate all possible means of relief. *Id.* n.1; *see also* Fla. R. App. P. 9.141(b)(2).

Petitioner's initial brief in his postconviction appeal was filed on May 1, 2013, well after *Watson* was decided and after the law of the Fifth DCA changed. (*See supra* note 7). Therefore, to obtain appellate review of the federal claims raised in his summarily denied Rule 3.850 motion, petitioner was required to raise and fully address the merits of those issues in his appellate brief. *See Watson*, 975 So. 2d at 573. *Cf. Daniels v. Sec'y, Dep't of Corr.*, No. 6:10cv200-ACC-KRS, 2010 WL 5297167, at *7 (M.D. Fla. Dec. 20, 2010) (recognizing that *Webb* was receded from in *Ward*, but holding that *Webb* was applicable to federal petitioner's claim, because

---

[7]The Eleventh Circuit has interpreted Florida law differently in the past. In two unpublished opinions issued in 2007, the Eleventh Circuit held that when a Florida defendant does not receive an evidentiary hearing in his Rule 3.850 proceeding and appeals the circuit court's decision denying his motion, he satisfies the federal exhaustion requirement as to <u>all</u> claims raised in his Rule 3.850 motion, even if he files a brief and fails to address each issue in his appellate brief. *See Darity v. Sec'y, Dep't of Corr.*, 244 F. App'x. 982, 984 (11th Cir. 2007); *Cortes v. Gladish*, 216 F. App'x 897, 899-900, at *2 (11th Cir. 2007). The Florida case upon which the Eleventh Circuit relied in *Darity* and *Cortes*, that is, *Webb v. State*, 757 So. 2d 608 (Fla. 5th DCA 2000), ceased to be the decisional law of the Fifth DCA in 2009. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009).

his state postconviction appeal pre-dated *Ward*). Petitioner's postconviction appellate brief presented substantive arguments as to the circuit court's rejection of Grounds One and Two above, but the brief made no substantive argument as to the circuit court's rejection of Ground Three (counsel's failure to hire a K-9 expert). (Ex. N). Petitioner's having chosen not to argue that the lower court erred in summarily denying Ground Three of his amended postconviction motion (and federal habeas petition), he failed to invoke the state court's established appellate review process as to that claim. *See, e.g., Mitchell v. Crews*, No. 3:12cv356/LC/CJK, 2014 WL 3720829, at *12-15 (N.D. Fla. July 28, 2014); *Coleson v. Crews*, No. 3:12cv96/ MCR/EMT, 2013 WL 1197729, at *35-36 (N.D. Fla. Feb. 4, 2013), *Report and Recommendation adopted*, 2013 WL 1197764 (N.D. Fla. Mar. 25, 2013); *Solis v. Tucker*, No. 4:10cv3/SPM/CAS, 2012 WL 4478301, at *5 (N.D. Fla. Aug. 29, 2012), *Report and Recommendation adopted*, 2012 WL 4478782 (N.D. Fla. Sept. 28, 2012); *Green v. McNeil*, No. 1:09cv204/MP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011), *Report and Recommendation adopted*, 2011 WL 2790180 (N.D. Fla. July 15, 2011).

Any future attempt to exhaust state remedies would be futile under the State's procedural default doctrine, because a second appeal is unavailable and any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as successive. *See* Fla. R. Crim. P. 3.850(f). Thus, Ground Three is procedurally defaulted. Petitioner makes none of the requisite showings to excuse his procedural default. Petitioner's procedural default bars federal habeas review of Ground Three.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Julie L. Jones has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.    That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Tromondo Tobias Bolling*, Escambia County Circuit Court Case No. 08-CF-5285, be DENIED, and the clerk be directed to close the file.

2.    That a certificate of appealability be DENIED.

At Pensacola, Florida this 16th day of October, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.   A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.